## Ison v. Commonwealth.

(Decided February 4, 1921.)

### Appeal from Letcher Circuit Court.

1. Criminal Law—Instructions.—Where there is no fact or circumstance in the record to show or indicate that defendant in a criminal prosecution acted under his right of self-defense it is not error for the court to refuse an instruction submitting to the jury that defense.

2. Assault and Battery—Criminal Responsiblity—Discretion.—The common law offense of assault, or assault and battery is punishable under that law by an unlimited fine, or unlimited imprisonment in the county jail or workhouse or both, within the sound discretion of the jury or court trying the case, and that punishment has not been altered by any statutory provision in this Commonwealth. So that the only limitation thereon is that under the facts the punishment should not be so severe as to be "cruel and unusual" within the constitutional sense, and not in plain violation of the discretion to be exercised in its infliction.

3. Assault and Battery—Amount Awarded.—The assault and battery inflicted in this case was cruel, severe and humiliating. It was wholly unprovoked and committed by a young, stout man upon an old enfeebled one. A fine of $500.00 and ninety days' imprisonment in jail is held not to be excessive.

DAVID HAYS and MORRIS & JONES for appellant.

CHAS. I. DAWSON, Attorney General, and W. P. HUGHES, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and defendant in the indictment, Hiram Ison, was convicted in the Letcher circuit court of the offense of maliciously and unlawfully assaulting John Day and the punishment imposed by the verdict was a fine of $500.00 and confinement in the county jail for 90 days. His motion for a new trial was overruled and he prosecutes this appeal complaining (1) that the verdict is so severe and excessive as to be entirely unwar-

ranted by the evidence, and (2) that the court improperly declined to instruct the jury on defendant's right of self-defense.

It is apparent that the determination of each of the contentions calls for an examination of the evidence heard upon the trial, since unless they find support therein they can not be sustained; while on the other hand if the evidence sustains them the judgment should be reversed.

In disposing of the two grounds together, as we have concluded to do, it will first be necessary to make a brief statement of the substantial facts as appear from the testimony and of which there is no material contradiction found in the record. Bony Ison and John D. Day were joint defendants in the indictment with appellant and they were also convicted, but the court granted to each of them a new trial. Bony Ison is an uncle of appellant and his other co-defendant, John D. Day, is his first cousin. Harve Ison is also an uncle of appellant and John Day, the person assaulted, and his son Billy Day lived some two or three hundred yards from the residence of Harve Ison and on the latter's farm. Some time before the day of the assault John Day, appellant's victim, testified for the Commonwealth in a prosecution charging appellant with violating the fish and game law, wherein he was accused of gigging fish contrary to the provisions of that law and in which prosecution the appellant was convicted and fined $20.00. On the occasion of the assault Billy Day preceded his father a few minutes on a trip to a well in Harve Ison's yard to get a bucket of water and about the time he had drawn the water from the well and filled his bucket his father, John Day, who was engaged in a similar errand, appeared at the front gate of Harve Ison's place and his son halted him at the gate and offered to fill his bucket with water without the old man coming into the yard, since appellant and Bony Ison, who were in the house of Harve Ison, or about the front door, had been talking about the father in somewhat of a threatening and belligerent manner. About the time the son drew the water for his father and filled his bucket appellant discovered the presence of the father at or near the gate but on the outside of the yard and he immediately started towards him, saying that he intended to whip or beat $20.00 worth

out of the old man since the latter had caused him to
pay out that sum on the "fishing scrape." The old man
began to beg and plead and stated that he wanted no
trouble and that in the "fishing scrape" trial he had
testified to nothing but the truth, but these importunities
had no deterring effect on appellant; on the contrary
they appeared to have rendered him more determined in
his announced purpose. He went over the yard fence
into the road where the old man was and the latter
moved backwards, still pleading with appellant, and
finally he picked up two rocks but made no demonstra-
tion to use them and continued to move backward, say-
ing in substance to appellant that unless the pursuit was
abandoned the rocks would be used. About that time
Billy Day endeavored to go to the rescue of his father,
but Bony Ison at first grabbed him and held him and a
little later drew a 32 Winchester rifle on him and forced
him to leave the premises. Bony Ison then drew the
gun on old man Day and made him drop the rocks which
he had picked up and which he had never endeavored
to use, and the appellant, who was a young, vigorous,
stout man accosted his victim, who was more than three
score years of age, and gave him a sound beating, kick-
ing him in the side, breaking one of his ribs and other-
wise bruised his body, not desisting until Harve Ison
forced him to do so. The bruised victim then obtained
his bucket of water to go home but the appellant forced
him to take along a bucket of slop that was nearby, and
as the old man was departing appellant administered
to him several more kicks as a parting salute and for
good measure. The foregoing narration is in brief the
testimony of the Commonwealth's witnesses and it is in
all of its essentials practically admitted by appellant
and his witnesses. He states that he was angry at John
Day for testifying against him in the prosecution re-
ferred to and that he had threatened and intended to
whip him for having so testified. He admits getting
over the fence, going out of the yard and into the road
where his victim was and pursuing him for thirty or
forty feet before he was overtaken and before the whip-
ping occurred. No one says that old man Day in any
manner struck or offered to strike appellant with the
rocks, his fist or anything else. The only excuse which
appellant pretends to give for pursuing his victim was
that he was afraid the latter might use the rocks which

he had picked up if the pursuit was abandoned, and which contention is in the face of the fact that the old man was retreating and all the while disclaiming any desire for trouble. Appellant's contention in its last analysis comes to this, that if one desires to wreak vengeance against another and the latter has in his possession a weapon which he might use in defending himself it is lawful for the former to dispossess the latter of such weapon in order that he might the more successfully accomplish his revenge, and in disarming his victim he may call the assistance of a willing confederate with a Winchester gun and each of the two will be excused under the sacred right of self-defense. The position of appellant and his counsel, we must acknowledge, calls for a new application of the right of self-defense, and one which we have not met or been informed of in nearly thirty years' practice. It has been our understanding that the right could only be invoked when the accused committed his offense to prevent the infliction upon himself, or another, of death or great bodily harm at the hands of the assailant producing the danger, and which danger was then and there immediately pending, or the accused in the exercise of a reasonable discretion believed and had reasonable grounds to believe was immediately pending. It has never been applied where the danger was potential only or might arise in the future, or where the accused by his own wilful conduct created the danger and did not in good faith withdraw from the difficulty. This court has in a number of cases upheld the action of the trial court in refusing the self-defense instruction when the evidence did not authorize it. Taylor v. Houser, 12 Bush 465; Commonwealth v. Rudert, 109 Ky. 653; O'Hara v. Commonwealth, 164 Ky. 403; Owens v. Commonwealth, 187 Ky. 207, and Gregory's Criminal Law, section 112.

Being thoroughly convinced that the testimony shows the entire absence of any facts upon which the right of self-defense upon the part of appellant could be predicated the court did not err, under its duty to instruct the jury upon the entire law of the case, in refusing to give the self-defense instruction.

Neither can it be said that the punishment is excessive under the facts of this case. The offense of which appellant was convicted is a common law misdemeanor with no punishment fixed by statute. Under the common

law the punishment was a fine in any amount, or imprisonment in jail for any length of time, or both in the sound discretion of the jury or court trying the case. That punishment, limited only by a reasonable discretion in the light of the facts, still prevails with us. If the punishment inflicted is not so excessive in the light of the facts as to invade some constitutional right against "cruel and unusual punishment" it will not be disturbed. Chandler v. Commonwealth, 1 Bush 41; Cornelison v. Commonwealth, 84 Ky. 583, and Ward v. Commonwealth, 128 S. W. (Ky.) 72. Another interesting case analogous in principle is Burgess v. Commonwealth, 176 Ky. 326. The assault in the Chandler case was upon a woman committed for the purpose of taking from her the possession of her child. It did possess in favor of defendant one feature not found in the instant case, i. e., defendant therein denied the assault which is somewhat boastfully admitted in this case. The jury assessed a fine therein against defendant of $1,-500.00 and the court answering the contention that it was excessive said, "Nor can we admit that the alleged excessiveness of the adjudged fine can entitle the appellant to a reversal when the offense was so enormous, and for the public security required such exemplary punishment." A fine of $400.00 was upheld as not excessive in the Ward case where there was no battery but only an assault accompanied with offensive language. The assault in the Cornelison case was no more severe than the one in the instant case though it was committed in a manner most humiliating to the one assaulted. The jury fixed the punishment therein at a fine of one cent and imprisonment in the county jail for three years, and this court declined to interfere with it on the ground of its being excessive. We do not regard the assault and battery in this case as any less aggravating and inexcusable than those found in the cases referred to. The only excuse for the unprovoked assault committed by appellant was the rancor which he harbored against his victim for performing a compulsory legal duty in testifying for the Commonwealth in the prosecution against him for violating the fish and game laws. We have not yet arrived at the point where one must be terrorized, threatened, assaulted and beaten for discharging his duty as a good citizen in response to the process of the courts issued in the enforcement of the laws of the Com-

monwealth. In the light of the facts appellant has no ground to complain that the verdict is excessive.

Finding no error prejudicial to the substantial rights of appellant the judgment is affirmed.